# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OSIRIS THERAPEUTICS, INC.      \*

                           \*

                           \*

     v.                    \*              Civil No. CCB-18-950

                           \*

                           \*

MIMEDX GROUP, INC.          

                           \*

## MEMORANDUM

Currently pending before the court is a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim, filed by defendant MiMedx Group, Inc. ("MiMedx"). This dispute arises between Osiris Therapeutics, Inc. ("Osiris"), a Maryland corporation, and MiMedx, a corporation incorporated in Florida with its primary place of business in Georgia. For the reasons outlined below, MiMedx's motion to dismiss for lack of personal jurisdiction will be granted. The issues have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).

## BACKGROUND

Osiris is a regenerative medicine company based in Maryland. (Compl. ¶ 20, ECF No. 1). MiMedx, a competitor of Osiris, also produces products that serve the wound and orthopedic medicine market. (*Id.* ¶ 21). In 2013, Osiris entered into a distribution agreement (the "Distribution Agreement") with Stability Biologics ("Stability"). (*Id.* ¶ 4). Under the Distribution Agreement, which expired December 31, 2015, Stability agreed to sell Osiris's products to hospitals and clinics. (*Id.* ¶ 3–4). Stability also agreed to protect Osiris's confidential information, including its customer lists. (*Id.* ¶ 4). In the last quarter of 2015, Osiris pre-paid

Stability $1.28 million in commissions under the assumption that Stability would adhere to the Distribution Agreement and sell the Osiris products in its possession. (*Id.* ¶ 10).

On January 13, 2016, MiMedx acquired Stability. (*Id.* ¶ 7). In the lead-up to this acquisition, Stability's sale of Osiris products slowed substantially, and Stability ultimately did not sell $2.2 million worth of Osiris's products. (*Id.* ¶ 9). These products expired in Stability's warehouse and Stability, acting under MiMedx's direction, did not compensate Osiris for the expired products or reimburse the $1.28 million commission payment that Osiris had advanced. (*Id.*). In March 2016, Stability stopped making payments it owed Osiris under a payment plan (the "Ovation Payment Plan"), leading to an additional loss for Osiris of $2,950,075.00. (*Id.* ¶ 12). Osiris alleges that Stability and MiMedx also improperly accessed Osiris's customer lists and sales information, and began selling MiMedx's products to Osiris customers. (*Id.* ¶ 11). In total Osiris claims to have sustained $6,751,416.21 in damages, not including the unascertainable damage that resulted from MiMedx's use of Osiris's proprietary information. (*Id.* ¶ 15).

On April 2, 2018, Osiris brought suit against MiMedx alleging: (1) breach of the Ovation and Grafix Sales contract;[1] (2) conspiracy to breach the Ovation and Grafix Sales contract; (3) tortious interference with the Ovation and Grafix Sales contract; (4) civil conspiracy to interfere with the contract for Ovation and Grafix sales; (5) misappropriation of Osiris's information under the Maryland Uniform Trade Secrets Act ("MUTSA"); (6) unfair competition; (7) civil conspiracy to misappropriate Osiris's information under MUTSA; (8) civil conspiracy to commit unfair competition; (9) breach of the Ovation Payment Plan; (10) conspiracy to breach the Ovation Payment Plan contract; (11) tortious interference with the Ovation Payment Plan contract; and (12) civil conspiracy to interfere with the Ovation Payment Plan contract.

---

[1] The Ovation and Grafix Sales contract is an alternative name for the Distribution Agreement.

(*Id.* ¶¶ 42–111). Osiris seeks monetary damages. (*Id.*).

## STANDARD OF REVIEW

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). If the court resolves the personal jurisdiction question without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In assessing whether the plaintiff has carried this burden, the court resolves all disputed facts and reasonable inferences in the plaintiff's favor. *Carefirst*, 334 F.3d at 396 (citing *Mylan Labs*, 2 F.3d at 60).

## ANALYSIS

For a federal court to exercise personal jurisdiction over a foreign defendant, two hurdles must be surpassed. First, the forum state's long-arm statute must be satisfied. Second, the forum state's exercise of personal jurisdiction must comport with due process. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). The Maryland long-arm statute "authorize[s] the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." *CSR, Ltd. v. Taylor*, 411 Md. 457, 473 (2009) (quoting *Bond v. Messerman*, 391 Md. 706, 721 (2006)). Because the court finds that the exercise of personal jurisdiction over MiMedx would offend the Due Process Clause, the court need not resolve whether MiMedx's

3

actions satisfy § 6-103(b)(4)'s strictures. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4).[2]

In keeping with the Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "minimum contacts" with the forum state so that haling the defendant to court in the forum state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Depending on the breadth of a nonresident defendant's contacts with the forum state, a court may exercise either of two types of jurisdiction: general or specific. The court will consider each in turn.

## A. General Jurisdiction

Consonant with the Due Process Clause, general jurisdiction exists where a nonresident defendant's contacts with the forum are so "continuous and systematic" as to "render [the nonresident defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation's place of incorporation and principal place of business are the two paradigmatic bases for general jurisdiction. *Daimler*, 571 U.S. at 760. Absent one of these two bases, it may be possible to establish general jurisdiction in an "exceptional case." *Id.* at 761 n.19. But the corporation's operations in the forum state must be "so substantial and of a such a nature as to render the corporation at home in that State." *Id.*

Osiris pleads that the court has personal jurisdiction over MiMedx under § 6-103(b)(4), but Osiris did not plead in its complaint that this court may exercise general jurisdiction over MiMedx. (Compl. ¶ 18). In its response to MiMedx's motion to dismiss, Osiris appears to suggest that the court may exercise general jurisdiction over MiMedx because MiMedx operates

---

[2] "A court may exercise personal jurisdiction over a person, who directly or by an agent . . . [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." § 6-103(b)(4).

4

an amniotic membrane tissue bank in Maryland,[3] which is regulated by the Maryland

Department of Health and Mental Hygiene, Office of Health Care Quality and because MiMedx

assumed Stability's debts to Osiris. (Pl.'s Response Opp'n Mot. Dismiss ["Pl.'s Opp'n"] at 6, 7

n.1, ECF No. 28). A party may not amend their pleadings via briefing. *See S. Walk at*

*Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th

Cir. 2013). But even if Osiris had pled these facts in its complaint, they would not support the

court's exercise of general jurisdiction over MiMedx.

To establish general jurisdiction, a corporation's presence in the forum state must be

"comparable to a domestic enterprise in that state." *Daimler*, 571 U.S. at 133 n.11. The bar for

general jurisdiction is, in other words, a high bar, and with good reason. Nonresident defendants

must be allowed "to structure their primary conduct with some minimum assurance as to where

that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 472 (1985). None of MiMedx's alleged contacts with Maryland—which, even by

Osiris's characterization are limited to the acquisition of a subsidiary that owed debts to a

Maryland corporation and the operation of a single tissue bank in-state—suffice to give rise to

general jurisdiction.

A subsidiary's contacts with the forum state are generally not imputed to the parent entity

for purposes of the court's jurisdiction analysis. *See Saudi v. Northrop Grumman Corp.*, 427

F.3d 271, 276–77 (4th Cir. 2005). In rare instances, a single enterprise theory may be advanced,

but attributing a subsidiary's contacts to a parent corporation for jurisdictional purposes requires

---

[3] MiMedx disputes the veracity of this claim, explaining that MiMedx must register as a tissue bank in Maryland in order to distribute its products within the state, but MiMedx "does not operate any facilities nor does it produce any products within the State." (Def.'s Reply Mot. Dismiss ["Def.'s Reply"] at 6, ECF No. 30). Because the court considers this case at the motion to dismiss stage, without an evidentiary hearing, the court must resolve all disputed facts in Osiris's favor. *Carefirst*, 334 F.3d at 396 (citing *Mylan Labs*, 2 F.3d at 60).

an inquiry "comparable to the corporate law question of piercing the corporate veil." *Goodyear*, 564 U.S. at 930 (quoting Brilmayer & Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency*, 74 CAL. L. REV. 1, 14, 29–30 (1986)); *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61–62 (4th Cir. 1993) (discussing this inquiry in the context of Maryland's long-arm statute). Piercing the corporate veil under Maryland law is a high bar that can only be accomplished if the subsidiary has no independent reason for existence, "other than being under the complete domination and control" of the parent entity. *Mylan*, 2 F.3d at 61 (citing *Harris v. Arlen Properties, Inc.*, 256 Md. 185, 200 (1969)). Osiris has not alleged that Stability ceased to have a separate corporate existence after it was acquired by MiMedx, that Stability merged its books or accounting procedures with MiMedx after its acquisition, or that Stability must seek MiMedx's approval for significant decisions. *See Mylan*, 2 F.3d at 61 (internal citations omitted). Further, Stability was a Florida corporation with a principal place of business in Tennessee at the time it signed the Distribution Agreement with Osiris, and after its acquisition by MiMedx, Stability was reorganized as a Georgia corporation. (Mem. P. & A. Supp. Def.'s Mot. Dismiss [Def.'s Mot.] at 2, ECF No. 22-1].[4] Thus, even if Stability's contacts could be imputed to MiMedx, it is far from clear that Stability has contacts with Maryland sufficient to support the court's exercise of general jurisdiction. *See Daimler*, 571 U.S. at 136–37 (holding that even if a subsidiary's contacts with California were attributable to the parent corporation, those contacts, which included the existence of multiple California-based

---

[4] Neither the Distribution Agreement nor the Agreement and Plan of Merger were filed with Osiris's complaint. However, they are incorporated by reference because various counts in the complaint are premised on a breach of the Distribution Agreement, and because MiMedx's acquisition of Stability is intertwined with Osiris's claim that MiMedx caused Osiris's injuries. Because these documents are incorporated by reference, and corroborated by Osiris, (Pl.'s Opp'n at 9, 10), the court may consider them without converting this motion into a motion for summary judgment. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'").

facilities, would not give rise to general jurisdiction). And even "regularly occurring sales of a product" in the forum state does not give rise to general jurisdiction. *Goodyear*, 564 U.S. at 930 n.6. The operation of a sole tissue bank in Maryland is therefore an insufficient basis upon which to ground the court's exercise of general jurisdiction.

The court, therefore, will not find that general jurisdiction exists over MiMedx.

## B. Specific Jurisdiction

Specific jurisdiction is appropriate when the nonresident defendant's "qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014) (citing *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012)). To assess whether specific jurisdiction exists, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (quoting *Tire Eng'g*, 682 F.3d at 302). Specific jurisdiction cannot be exercised unless there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919).

Osiris has not sufficiently alleged that any suit-related conduct occurred in Maryland. Instead, Osiris premises its case for specific jurisdiction on three arguments. First, MiMedx's distribution of amniotic membranes through a Maryland tissue bank suffices to establish specific jurisdiction. (Pl.'s Opp'n at 6–7). Second, in acquiring Stability and then encouraging Stability to breach its contractual obligations to Osiris, MiMedx "intentionally reached into Maryland to

7

cause injury to Osiris." (*Id.* at 6).[5] Third, that § 6-103(b)(4), a section of Maryland's long-arm statute, provides a constitutional workaround, supplying a basis for personal jurisdiction absent the establishment of general jurisdiction, or the existence of suit-related conduct in state. (Pl.'s Opp'n at 5–6). The court considers each argument in turn.

MiMedx's operation of a Maryland tissue bank cannot support specific jurisdiction because Osiris's claims do not arise out of this contact.[6] Osiris alleges that amniotic membranes produced at MiMedx's tissue bank are a primary ingredient of EpiFix, which "competes directly with an Osiris product and which gives rise to the claims that are the subject of this litigation." (Pl.'s Opp'n at 7). But this link to Maryland is too tenuous to support the court's exercise of specific jurisdiction over MiMedx. Amniotic membranes may be a primary ingredient in EpiFix, but Osiris has not alleged that MiMedx either produces or distributes EpiFix itself in Maryland. Further, it is not clear from the parties' motions whether Stability sold EpiFix to Osiris's clients in violation of the Distribution Agreement, or whether EpiFix is merely a product that competes with one of the Osiris products that Stability failed to sell. If the latter is true, the mere production of a competitor product in Maryland does not support the court's exercise of personal jurisdiction. And, most tellingly, the substantive claims Osiris brings are based on Stability's breach of the Distribution Agreement and MiMedx's allegedly tortious interference with Osiris's business relationship with Stability. Osiris has not alleged that any of the conduct that underlies these substantive claims—such as meetings between Stability and MiMedx executives, for example—occurred in Maryland. The court may only exercise specific jurisdiction over MiMedx

---

[5] Osiris argues that some of Stability's breached obligations to Osiris arise out of the Distribution Agreement, which states that disputes shall be decided by arbitration in Maryland, and that the arbitrator will apply Maryland law. (*Id.* at 1; Def.'s Mot. Ex. A at 14, ECF No. 22-2).

[6] Further, Osiris did not raise this argument in its complaint. It was raised for the first time in Osiris's response in opposition to MiMedx's motion to dismiss. (Pl.'s Opp'n at 9).

if its Maryland contacts are the genesis of Osiris's claims. The purported existence of a Maryland tissue bank that produces one component of a product which competes against Osiris's products is too attenuated a link to both the forum state and the cause of action to support jurisdiction.

The Supreme Court's personal jurisdiction jurisprudence makes clear that specific jurisdiction is premised on the defendant's contacts with the forum state, not the defendant's contacts with individuals from the forum state, or the plaintiff's contacts with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). The Fourth Circuit has held that when the brunt of the harm of tortious conduct is felt within, and specifically aimed at, the forum state, this may inform the jurisdictional analysis.[7] But the mere causation of harm within the forum state alone cannot support jurisdiction, instead, it must be "accompanied by the defendant's own contacts with the state." *Geometric*, 561 F.3d at 280–81 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625–26 (4th Cir. 1997) (explaining that the defendant must have contacts with the forum state, otherwise the effects test would allow the plaintiff's "decision about where to establish residence" to dominate the personal jurisdiction analysis).

Osiris claims that in acquiring Stability, MiMedx assumed Stability's existing obligations to Osiris. Because Osiris is a Maryland corporation, and because several of Stability's disputed obligations to Osiris arose from the Distribution Agreement, which is allegedly governed by Maryland law, Osiris argues that MiMedx has therefore aimed its tortious conduct at Maryland, and that the exercise of specific jurisdiction is appropriate. But Osiris improperly merges Stability's contacts with MiMedx's contacts. As discussed above, attributing a subsidiary's

---

[7] The Fourth Circuit laid out the parameters of the "effects test" as: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

contacts to a parent corporation for jurisdictional purposes requires an inquiry akin to piercing the corporate veil. Osiris has not pled facts to support such an argument. Maryland law sets a high bar for piercing the corporate veil, which is not met here because Stability maintained an independent corporate identity even after its acquisition. (Def.'s Reply Mot. Dismiss at 11, ECF No. 30).[8] Further, MiMedx's only contact with Maryland is its distribution of amniotic tissue through a Maryland tissue bank. As discussed above, this contact is insufficient to support specific jurisdiction in Maryland. The effects test therefore does not supply a basis for the court's exercise of personal jurisdiction over MiMedx.

Finally, absent the establishment of general jurisdiction, a court may only exercise personal jurisdiction over a nonresident defendant if they have suit-related contacts with the forum state. *Bristol-Myers*, 137 S. Ct. at 1781. Section 6-103(b)(4), therefore, can only serve as a basis for personal jurisdiction, consistent with the Due Process Clause, if either the defendant is at home in the forum state, or the defendant has sufficient suit-related contacts with the forum state. Because no basis for general jurisdiction has been shown, and because Osiris has not alleged that any suit-related contacts by MiMedx occurred in Maryland, § 6-103(b)(4) cannot support the court's exercise of personal jurisdiction.

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss for lack of personal jurisdiction will be granted. A separate order follows.

_12/11/18_
Date

_Catherine C. Blake_
Catherine C. Blake
United States District Judge

---

[8] In its complaint Osiris alleges that MiMedx assumed Stability's assets, cash, and liabilities. (Compl. ¶ 8). But Osiris has not contended that Stability ceased to exist as an independent corporation after its acquisition by MiMedx.

10